**ARMSTRONG et al. v. MATSON NAVIGATION CO. et al.**

**CURRIE et al. v. MATSON NAVIGATION CO. et al.**

**STEWART et al. v. MATSON NAVIGATION CO. et al.**

Nos. 12349, 12352, 12350.

United States Court of Appeals Ninth Circuit.

July 18, 1950.

As Modified Aug. 28, 1950.

Albert Michelson and Herbert Chamberlin, San Francisco, Cal., for appellants Armstrong and Currie and others.

Gladstein, Andersen, Resner & Sawyer, Herbert Resner, San Francisco, Cal., for appellants Stewart and others.

Frank J. Hennessy, U.S.Atty., C. Elmer Collett, Asst. U.S.Atty., San Francisco, Cal. (Lillick, Geary, Olson, Adams & Charles, and James L. Adams, San Francisco, Cal., of counsel) for the United States.

Brobeck, Phleger & Harrison, Alan B. Aldwell, San Francisco, Cal., for Matson Navigation Co.

Before MATHEWS, ORR and LINDLEY,* Circuit Judges.

ORR, Circuit Judge.

These cases, consolidated on appeal, involve claims for war risk bonuses and maintenance for the periods in which appellants were interned on land by the Japanese Government during the recent war. Appellants were licensed and unlicensed crew members of the S. S. Malama. They sailed aboard that vessel on November 29, 1941, from San Francisco on a voyage described in the shipping articles as follows: "* * * from the port of San Francisco, California, to ports in the Philippine Islands by a route, including stops, as ordered by an agency or department of the United States Government and returning either eastbound or westbound via Cape of Good Hope as ordered by an agency or department of the United States Government, with a right to load or discharge at any intermediate ports, and back to a final Pacific Coast port of discharge and/or bunkering in the United States * * *." The vessel arrived in Honolulu on December 8, 1941, and sailed from Honolulu on December 16, 1941, on a route ordered by United States military and naval authorities. On January 1, 1942, while proceeding in the direction of New Zealand, the ship was attacked and sunk by Japanese planes. The crew were picked up by a Japanese raider and taken to Japan and China, where they were interned until their liberation on September ber 5, 1945. Subsequently they were repatriated to Pacific Coast ports in the United States.

Appellants were paid war risk bonuses for the period spent at sea west of the 180th meridian aboard Japanese ships and American repatriation ships. The claims here involve war risk bonuses for the period of internment on land and maintenance from the time of capture by the Japanese to the time of liberation.

In support of their claim for payment of war risk bonuses while interned on land, appellants rely on Agnew v. American President Lines, 9 Cir., 1949, 177 F.2d 107; Federer v. American President Lines, 9 Cir., 1949, 177 F.2d 111, and Griffin v. American President Lines, 9 Cir., 1949, 177 F.2d 111, certoriari denied 339 U.S. 951, 70 S.Ct. 478, hereinafter referred to as the President Harrison cases, decided subsequent to entry of judgments by the trial court in the instant cases. Appellees attempt to distinguish the instant cases from the President Harrison cases on the basis of a difference in the wording of the riders attached to the shipping articles in each case. The riders under consideration here, it is said, expressly incorporate the provisions of supplementary collective bargaining agreements between appellee Matson Navigation Company and appellants' unions, and said supplementary agreement provisions negate any obligation to pay war bonuses during internment on land.

In the President Harrison cases the applicable provision of the riders was as follows: "In the event the vessel is interned, destroyed or abandoned as a result of war operations and is unable to continue her voyage, basic wages and emergency wages specified in the collective bargaining agreement between [the parties] shall be paid to the date the members of the crew arrive in a continental United States port, and the employees shall be repatriated to a continental United States port. War bonuses at the rates specified in [certain paragraphs] hereof shall be paid while employees are in the war zones defined *herein.*" [177 F.2d 108] (Emphasis supplied.) In the Presi-

* Circuit Judge, Seventh Circuit, sitting by special designation.

dent Harrison cases it was held that since the only provision in the rider itself which could be rationally construed as a definition of a war zone was a provision for the payment of bonuses "from the crossing of the 180th Meridian westbound until crossing the 180th Meridian eastbound," and the internment had taken place west of the 180th meridian, the seamen had been in a war zone, and therefore were entitled to war bonuses, during their entire period of internment on land.

■■■ The corresponding paragraphs of the riders in the cases before us contain substantially the same first sentences as the first sentence quoted from the President Harrison riders. The second sentence in said paragraph of the rider for unlicensed personnel reads as follows: "War risk bonuses at the rates specified in sub-division (b) paragraph 1 of the supplementary agreements between the parties shall be paid while employees are in the war zone areas defined *therein*." (Emphasis supplied.) The corresponding sentence in the rider for licensed personnel is the same except that the rates of bonus are set forth in the rider itself. Since, as we held in the President Harrison cases, the shipping articles and riders thereto are controlling in determining the amount of bonus payable, the supplementary agreements are material only to the extent that they are referred to and incorporated in the riders. It is apparent that the riders in the instant cases refer to the supplementary agreements for the limited purpose only of defining the war zone areas within which the riders make the bonuses payable. A typical supplementary agreement provides:

"(a) There shall be five war [risk] zones; namely: * * *

"III. Trans-Pacific voyages to Japan, Philippine Islands, China, Indo-China, East Indies, Malayan Peninsula. (After crossing the 180th Meridian westbound, until recrossing the same Meridian eastbound.)"

The remaining supplementary agreements are in substantially the same form. It is contended that because the riders expressly incorporate the agreements and the agreements refer only to "voyages", the conclusion must follow that bonuses were to be paid only while the seamen were at sea west of the 180th meridian. We think such a construction gives too broad a scope to the reference to supplementary agreements contained in the riders. The reference to supplementary agreements contained in the riders does not determine the entire conditions under which bonuses were payable, but such reference was for the sole purpose of determining the geographical areas in which bonuses were payable. The word "voyages" is not descriptive of a geographical area. Geographical areas were specifically named, such as "Japan, Philippine Islands, China, Indo-China, East Indies, Malayan Peninsula. (After crossing the 180th Meridian westbound until recrossing the same meridian eastbound.)" Appellants' internment having taken place in China and Japan, they were within the war zone areas described in the supplementary agreements and under our holding in the President Harrison cases are entitled to war bonuses for the entire period of their internment.

■ Appellants made claims for maintenance while interned. These were disallowed on grounds which were subsequently held valid in the President Harrison cases. Appellants contend they have an additional valid reason for allowance because of an asserted deviation from the voyage described in the shipping articles. The articles specified a voyage from San Francisco to the Philippines "by a route, including stops, as ordered by an agency or department of the United States Government." When the ship was sunk, she was proceeding from Honolulu in the direction of New Zealand by a route ordered by United States military authorities, as contemplated by the articles. We think no deviation occurred, but conceding arguendo there was, it would not have subjected appellants to greater risks than had they proceeded directly to the Philippines and, hence, could not have been a proximate cause of their privations.

■ The judgments are reversed as to the claims for war risk bonus and affirmed as to the claims for maintenance. Appellants are entitled to costs and to interest on

the amount of their war bonus claims at the rate of seven per cent from the date of filing of their respective libels.

Order Modifying Opinion.

PER CURIAM.

The opinion in these cases is amended as follows:

The cause is remanded for the entry of a decree for each appellant determining for each the amount of war bonus and interest to which he is entitled pursuant to our opinion, and for the taxing of costs.

In the proceedings below, appellee Matson Navigation Company impleaded the United States, alleging that the United States had agreed under certain charter party provisions to indemnify Matson for war bonus and maintenance claims. The district court, having decided that appellants were entitled to no recovery, found it unnecessary to determine the existence or extent of liability for such indemnification. Our decision herein makes such a determination necessary, and the district court is instructed to take such steps as may be necessary to determine the liability of the United States to Matson under the impleading petitions.